**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Van Henry Jordan, Jr.,<br><br>Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-12-00953-PHX-NVW<br><br>**ORDER** |

Plaintiff Van Henry Jordan, Jr., seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him supplemental security income under section 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND**

**A.     Factual Background**

Jordan was born in September 1955. He has a GED and is able to communicate in English. He previously worked as a van driver helper (furniture mover) and a conveyer belt operator. His last substantial gainful activity was on April 17, 2009. He testified that he also had done occasional lawn work and helped in a repair shop since April 2009.

Jordan has degenerative disc disease of the lumbar spine and also spondylolithesis (forward slippage of one vertebrae on the one below it). He also has bilateral shoulder impingement, hypertension, and psoriasis.

Jordan testified that he lives with his ex-wife's uncle and disabled wife. Jordan helps them with household chores and with transferring the wife in and out of her wheelchair. He prepares his own meals and sometimes makes dinner for his ex-wife's uncle and wife. In the evenings, he sometimes visits a lady friend. Jordan testified that he does not have problems driving.

### B. Procedural History

On April 17, 2009, Jordan applied for supplemental security income, alleging disability beginning January 1, 2008. On April 15, 2011, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On May 5, 2011, the ALJ issued a decision that Jordan was not disabled within the meaning of the Social Security Act. The Appeals Council denied Jordan's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On May 7, 2012, Jordan sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

### III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## IV. ANALYSIS

At step one, the ALJ found that Jordan has not engaged in substantial gainful activity since April 17, 2009. At step two, the ALJ found that Jordan has the following severe impairments: degenerative disc disease of the lumbar spine, hypertension, spondylolithesis and psoriatic arthropathy, bilateral shoulder impingement, and psoriasis. At step three, the ALJ found that Jordan's impairment or combination of impairments did not meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ determined that Jordan:

> has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except, due to his impairments, the claimant is limited to occupations that require no more than occasional postural maneuvers such as balancing, stooping, kneeling, crouching, crawling, and climbing; he must avoid occupations that require pushing and pulling with the upper extremities to include the operation of hand levers; and he could not be exposed to dangerous machinery and unprotected heights.

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). If someone can do medium work, he or she can also do sedentary and light work, which includes "a good deal of walking or standing." *Id.* The ALJ concluded that Jordan is unable to perform any past relevant work.

At step five, the ALJ found that Jordan "was 53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed" and "subsequently changed age category to advanced age." Considering Jordan's age, education, work experience, and residual functional capacity, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Jordan can perform.

- 4 -

## A. The ALJ Did Not Err in Weighing Medical Source Evidence.

### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.*

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. There must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Evidence from "acceptable medical sources," *e.g.*, licensed physicians and licensed or certified psychologists, is needed to establish an impairment. 20 C.F.R. § 416.913(a). Evidence from other sources, such as nurse practitioners, may be considered to determine the severity of the claimant's impairment and how it affects the

claimant's ability to work. 20 C.F.R. § 416.913(d). Only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight. Social Security Ruling 06-03p.

### 2. Treating Nurse Practitioners, Karen Kavena and Janet Bennett

On December 3, 2009, Nurse Kavena wrote that Jordan had received health care intermittently at Phoenix Indian Medical Center for several years from various providers. The medical records indicate that Jordan first reported low back pain in May 2008 and sought treatment for back and shoulder pain on June 3, 2008. Jordan saw Nurse Kavena on September 11, 2008, regarding eyeglasses, and the treatment record indicates he reported "usual shoulder pain; tramadol and capsaicin cream help."

On January 12, 2009, Nurse Kavena noted that Jordan stated he "was doing well until several wks ago; notices that he gradually developed pain and decreased ROM in left shoulder. . . Can't do lifting, so had to stop moving furniture." She observed that Jordan had normal range of motion in his back and limited range of motion in his left shoulder. On February 9, 2009, Nurse Kavena recorded that Jordan denied neck, back, or joint pain, but complained of left shoulder pain and limited abduction of left arm. He had attended physical therapy and was doing exercises. On May 28, 2009, Nurse Kavena noted that Jordan reported that his left shoulder pain was not improving and helping with a roofing project seemed to make it worse. She referred him for a shoulder x-ray and steroid injection. The x-ray showed only minor degenerative changes.

On September 24, 2009, Nurse Kavena recorded that Jordan reported the steroid injection was helpful for a short time, but the left shoulder pain had worsened. He also reported having chronic lower back pain and a rash on his leg for about three weeks. She referred him for a shoulder MRI, which showed a torn tendon. On November 17, 2009, Nurse Kavena recorded that Jordan was unable to raise his arms above shoulder height

and reported that his chronic back pain had gotten worse. A second x-ray of his lower back showed mild to moderate spondylolisthesis at L5-S1.

On November 20, 2009, Nurse Kavena completed a Medical Assessment of Ability to Do Work-Related Physical Activities. She opined that Jordan could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, could stand or walk about 6 hours in an 8-hour work day, could sit about 6 hours in an 8-hour work day, and needed to alternate sitting and standing every hour. She further opined that he could occasionally climb, balance, stoop, kneel, crouch, and crawl. She indicated that he did not require a hand-held assistive device for ambulation.

Also on November 20, 2009, Nurse Kavena completed a Pain Functional Capacity Questionnaire. She opined that Jordan's pain was moderately severe, *i.e.*, seriously affects his ability to function, and often sufficiently severe to interfere with attention and concentration. She further opined that Jordan often experiences deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner.

Jordan continued to receive treatment from Nurse Kavena through December 2010, complaining of hip, shoulder, and low back pain. In May 2010, an MRI confirmed right hip aseptic necrosis.

On February 17, 2011, Nurse Bennett assumed Jordan's care. She recorded that he had normal range of motion in his back and upper extremities and reported tolerating his back pain if he did not do a lot of bending. The treatment record states that he was "dealing with hip and shoulder" and "does just a little in garden."

On March 28, 2011, Nurse Bennett completed a Medical Assessment of Ability to Do Work Related Physical Activities in which she identified Jordan's diagnosed physical impairments as spondylolithesis and psoriatic arthropathy. She opined that Jordan could occasionally lift and carry less than 10 pounds, never carry any weight frequently, stand

- 7 -

and/or walk less than 2 hours in an 8-hour work day, and sit less than 6 hours in an 8-hour work day. She further opined that Jordan must alternate sitting and standing usually at least every 20 minutes. She also opined that Jordan must never climb, balance, stoop, kneel, crouch, or crawl. She indicated that his impairments require the following environmental limitations: heights, moving machinery, temperature extremes, chemicals, dust, and other (unspecified). She also stated that he periodically requires a hand-held assistive device for ambulation.

On March 28, 2011, Nurse Bennett completed a Pain Functional Capacity Questionnaire. She opined that Jordan's pain was moderately severe, *i.e.*, seriously affects his ability to function, and often sufficiently severe to interfere with attention and concentration. She wrote that Jordan's pain is controlled with medications, but they make work unsafe. She further opined that Jordan constantly experiences deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner.

### 3. Examining Physician Keith Cunningham, D.O.

On July 15, 2009, Dr. Cunningham examined Jordan. He noted that Jordan reported joint pain, particularly stiffness of the legs, shoulders, and back. Dr. Cunningham observed that Jordan could lift his arms normally and move his cervical spine, shoulders, elbows, wrists, fingers, thumbs, hips, knees, and ankles normally. He was able to sit, walk, and squat normally. He was able to stand neutrally, but expressed pain with lateral flexion 20 degrees bilaterally. Dr. Cunningham assessed Jordan as having joint pains with most limitations about the lumbar spine and no evidence of radiculopathy.

Dr. Cunningham opined that Jordan could lift and carry 50 pounds occasionally and 10 pounds frequently, stand and/or walk 6-8 hours in an 8-hour work day, and sit without limitation. He further opined that Jordan could frequently stoop and crouch and

- 8 -

occasionally climb, kneel, and crawl. Dr. Cunningham opined that Jordan should not work around heights, but had no other environmental limitations.

### 4. State Agency Reviewing Physicians, Leah Holly, D.O., and Mikhail Bargan, M.D.

On August 14, 2009, Dr. Holly reviewed Jordan's medical records and opined that he could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour work day, and sit about 6 hours in an 8-hour work day. She further opined that Jordan could occasionally climb, kneel, and crawl and frequently balance, stoop, and crouch. She also opined that his impairments do not require any environmental limitations. She noted that her opinion differed slightly from that of Dr. Cunningham because she believed the records showed that Jordan could lift and carry 25 pounds frequently, not only 10 pounds as opined by Dr. Cunningham.

On January 14, 2010, Dr. Bargan reviewed Jordan's medical records and opined that he could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour work day, and sit about 6 hours in an 8-hour work day. He opined that Jordan could frequently climb ramps and stairs, but only occasionally climb ladders and scaffolds. He further opined that Jordan could occasionally crawl and frequently balance, stoop, kneel, and crouch. Dr. Bargan added that Jordan may not climb ropes. Dr. Bargan also indicated that Jordan's ability to reach in all directions is limited to avoid overhead reaching with his left arm. He opined that Jordan must avoid concentrated exposure to hazards such as machinery and heights.

### 5. The ALJ's Weighing of Medical Source Opinions

Jordan contends the ALJ erred by rejecting the assessments of nurse practitioners Kavena and Bennett and by relying instead on Dr. Cunningham's opinion and the assessments of non-examining state agency physicians.

Although nurse practitioners Kavena and Bennett treated Jordan, they are not "acceptable medical sources" and are not considered treating sources whose medical opinions may be entitled to controlling weight.[1] The ALJ stated that she gave "little weight" to their assessments regarding how Jordan's physical impairments affect his ability to work because they were inconsistent with Jordan's recent work activities, they departed substantially from the rest of the evidence of record, and:

> . . . the nurses apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

These are specific and legitimate reasons, supported by substantial evidence in the record, for giving the nurse practitioner's opinions "little weight."

The ALJ stated that she gave Dr. Cunningham's opinion "great weight" because he was an examining doctor and his opinion was consistent with the objective medical evidence. She gave "some weight" and "appreciable weight" to Dr. Holly's physical residual functional capacity assessment dated August 14, 2009, because it was consistent with the other evidence. She gave "some weight" to Dr. Bargan's residual functional capacity assessment, but not more weight because he did not examine or treat Jordan. Coupled with the ALJ's detailed findings, these reasons are specific and legitimate.

The ALJ was not required to give any of these medical sources controlling weight, and her residual functional capacity assessment is generally supported by the opinions to

---

[1] Unlike the nurse practitioner in *Taylor v. Comm'r of Social Security Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011), there is no evidence here that nurse practitioners Kavena and Bennett were working under the supervision of an acceptable medical source. Making referrals to specialists is not the equivalent of being supervised by them.

- 10 -

which she gave some or great weight. Therefore, the ALJ did not err in weighing medical source evidence.

**B.     The ALJ Did Not Err in Evaluating Jordan's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Jordan's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Jordan's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

The ALJ fully explained the basis for her credibility determination. Although Jordan had received medical treatment for his allegedly disabling impairments, he had not received significant intensive medical care. He had not had surgery, only routine care from a nurse practitioner. Further, the treatment, including prescribed medications, had been generally successful in controlling his symptoms. In some instances, Jordan had failed to comply with recommendations, which suggests that the symptoms may not have been as serious as alleged.

Further, the ALJ found that Jordan's description of symptoms and limitations throughout the record was vague, general, inconsistent, and unpersuasive. Jordan claimed the symptoms were present all of the time and had not provided convincing details regarding factors that precipitate the allegedly disabling symptoms.

- 11 -

The ALJ also found that Jordan's work history showed that he worked only sporadically before the alleged disability onset date, which raised a question regarding whether his continuing unemployment was actually due to medical impairments. Further, Jordan initially reported not working since the alleged onset date, but subsequent information revealed that it was not true. The ALJ found that Jordan's inaccurate reporting on this issue suggested that much of what he alleged may be similarly unreliable.

Additionally, the ALJ found that Jordan's reported daily activities are not as limited as one would expect given his complaints of disabling symptoms and limitations. They also support part of the residual functional capacity determination because Jordan reported he was able to assist in helping a woman get into her wheelchair and with other care activities and he has no problems driving. The ALJ concluded:

> Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable. Claimant's credibility is diminished by inconsistencies found in the record outlined in detail above.

Thus, the ALJ provided specific, clear, and convincing reasons for finding Jordan's statements regarding the intensity, persistence, and limiting effects of his symptoms not credible to the extent they are inconsistent with the residual functional capacity assessment.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 2nd day of January, 2013.

_____
Neil V. Wake
United States District Judge